MYERS ET AL. *v.* VIVERETT.

[70 South. 449.]

1. WILLS. *Deeds. Life estate. Adverse possession under life tenant. Vender and purchaser. Bona-fide purchaser. Notice. Record destroyed by fire. Estoppel. Failure to assert title. Ejectment. Common source of title.*

Where plaintiff's father and mother executed an instrument providing that in consideration of five dollars, and parental affection which the first parties had towards the second parties, they thereby granted, gave, bargined and sold to the second parties the lands therein described, to have and to hold as joint owners thereof in fee simple, that the first parties for themselves, their heirs covenanted and agreed to defend and warrant the title to the second parties, but that it was understood and agreed that the first parties were to hold possession and 'exercise control and ownership over such lands during their natural lives, and that at their death the second parties were to be the sole owners thereof with personal property of which they might die seized and possessed. Such an instrument in so far as the land conveyed was not a will but a deed with the reservation of a life estate to the grantors.

2. SAME.

Under such a deed the statute of limitations did not commence to run against the grantees until the death of both the grantors.

3. VENDER AND PURCHASER. *Bona-fide purchaser. Notice. Record of deeds.*

Purchaser of the land were charged with notice of the title of parties claiming under a prior deed which had been recorded although the record of such deed had been destroyed by fire and not again recorded.

4. VENDER AND PURCHASER. *Bona-fide purchaser. Notice. Records destroyed by fire.*

Code 1906, section 3185, first enacted in 1892 providing that a lost, stolen or destroyed record shall not constitute constructive notice longer than three years from the time that chapter became operative, or from the loss, theft, or destruction, unless within that time the instrument shall again be placed of record or proceedings be begun to perfect the record, has no retrospective effect. Its clear meaning is: 1st, that a record which has been lost, stolen or destroyed prior to the time the statute became operative shall not constitute constructive notice longer than three years from such time, unless within that time the instrument shall again be placed on the record, or proceedings be begun to perfect the record and, 2nd, that a record lost, stolen or destroyed after the statute became operative shall not constitute constructive notice longer that three years from the time of the loss, theft or destruction thereof, unless within that time the instrument shall again be placed on the record or proceedings be begun to perfect the record.

5. ESTOPPEL. *Failure to assert title.*

Where the grantees in a second deed to land, each had constructive notice of a prior deed under which the grantees therein claimed title and it does not appear from the evidence that any one of the grantees under the second deed relied upon any act or statement of the grantees under the first deed as indicating that they claimed no interest in the land, and the record does not present a case of estoppel because of the acceptance of benefits in such case the grantees under the first deed are not estopped from asserting title to the land.

6. EJECTMENT. *Common source of title.*

Where a husband and wife conveyed land by deed to their children reserving a life estate in the same and the deed was duly recorded and after the death of the husband, the wife conveyed

the land in fee simple to third parties. In a suit between the children and such third parties for the land, if the wife's only interest in the land was the life estate reserved in the deed to her children, then the common source of title was her husband. If the wife and not her husband, was in fact the owner of the land when the deed to the children was made, then she was the common source from which the title of the parties was derived.

APPEAL from the chancery court of Newton county.

HON. SAM WHITMAN, Chancellor.

Suit by Mrs. T. Myers and another against L. L. Viverett to cancel claim of title to land. From a decree for defendants, plaintiffs appeal.

Complainants claim title under an instrument executed by their father and mother, Benjamin and Eunice Shepherd, which is as follows:

"This deed of conveyance made and entered into this the 10th day of November, 1873, between Benjamin Shepherd and his wife, Eunice Shepherd, of the first part, and Rachel and Mary Jane Shepherd, of the second part, all of the county of Newton, state of Mississippi, witnesseth that for and in consideration of the sum of five dollars, and for the further consideration of the parental affection, they have and bear for and toward the said second parties as their children, do by these presents grant, give, bargain, and sell to the said second parties the following lands, tenements, and hereditaments situate in said county, to-wit: west half southeast quarter, section 12, and the west half of the northeast quarter and the east half, northwest quarter, section 13, township 8, range 11 east. To have and to hold said premises as joint owners thereof to their own proper use and benefit in fee simple, and the said first parties for themselves, their heirs, executors, and administrators covenant and agree to defend and warrant the title of said premises to the said second parties against the claim of all persons whatever, but it is nevertheless distinctly understood and agreed that the said first parties are to hold possession and exercise control and ownership to and over said lands, tene-

ments, etc., during their natural lives, and at their deaths the said second parties are to be the sole owners thereof with the personal property of which they may die seised and possessed.

"In witness whereof the said first parties have hereunto set their hands and seals day and year first above written."

Appellants by their bill filed in the court below seek to recover possession from appellee of the land in controversy and to have his claim thereto cancelled as a cloud upon their title. Appellants claim title to the land under an instrument executed by their father and mother, Benjamin and Eunice Shepherd, on the 10th day of September, 1873. This instrument was on the date of its execution duly recorded in the office of the chancery clerk of Newton county; and the reporter is directed to set it out in full. At the time of the execution of this instrument Benjamin Shepherd and his wife, together with several of their children, including appellants, were living upon the land, and continued so to do until the death of Benjamin Shepherd, which occurred on the 8th day of January, 1876. After the death of Benjamin Shepherd, Mrs. Shepherd and several of her children, including appellant Rachel V. Shepherd, and probably appellant Myers, who was formerly Mary Jane Shepherd, continued to live on the land until December of the next year, when she executed and delivered to Mrs. S. J. Livingstone a deed to a part of the land, purporting to convey a fee-simple title thereto. The consideration named in this deed was four hundred dollars, but the real consideration was an exchange of lands; Mrs. Livingstone executing to Mrs. Shepherd a deed to certain other land to which Mrs. Shepherd and her family, including appellant Rachel Shepherd, but not appellant Myers, moved, and on which they continued to reside for several years. Appellant Mrs. G. T. Myers, formerly Mary Jane Shepherd, was then married to Myers; and, while the evidence leaves it in doubt as to whether or not Mrs. Myers at the time of

the exchange was living with her mother, it is clear, however, that she did not go with her to the land obtained from Mrs. Livingston.

The negotiations leading up to this exchange of land were conducted by William Shepherd, a son of Mrs. Eunice Shepherd and brother of appellants, in whose testimony appear the following questions and answers:

"Q. State, Mr. Shepherd, what knowledge your two sisters, Mrs. Myers and Miss Rachel Shepherd, had relative to the sale of the land or trade by your mother. A. They had as much knowledge of it as I had. Q. What knowledge did you have? A. The family talked it before it was traded, and I made the trade myself for my mother and these girls, and my mother got me to go and see Mrs. Livingstone. I think my mother had seen Mrs. Livingstone before that, and they couldn't hardly get together, and they got me to go and see her, and told me, if we couldn't trade like we wanted to, to put in two hundred and forty acres that my mother owned—three eighties. I went to see Mrs. Livingstone, and me and her traded acre for acre. That left us one eighty back in Newton county."

It does not appear what statement William Shepherd made to Mrs. Livingstone in order to induce her to agree to the exchange, and the evidence is wholly silent as to any information she may have had relative to appellants' title; in fact, it discloses nothing along this line except the mere fact that the exchange was made and the deeds pursuant thereto executed. Appellants both deny that they participated in any way in bringing about this exchange of lands.

Some time after the exchange between Mrs. Shepherd and Mrs. Livingstone, Mrs. Shepherd sold to W. B. F. Adams the remainder of the land included in the instrument under which appellant claim title. This sale was also negotiated by William Shepherd, who, on being asked at whose request and on whose authority he made it, answered:

"My mother's, my sisters,' and my brother Henry Shepherd's—the whole family's. It was their request that I go and sell it and get just what I could for it."

What representations, if any, he made to Adams in order to induce him to purchase do not appear. Participation in this sale was also denied by appellants; they claiming not to have been consulted relative thereto.

Appellee claims title by mesne conveyances through these two deeds executed by Mrs. Shepherd to Mrs. Livingstone and Mr. Adams. Prior to the death of Mrs. Shepherd, which occurred in September, 1900, she sold to William Shepherd the land obtained by her from Mrs. Livingstone. This sale was made with the knowledge and consent of Rachel V. Shepherd, to whom the money was paid by her brother William, as was also the money received by him from the sale of the land to W. B. F. Adams. Mrs. Shepherd at this time was getting old; and she was being looked after by her daughter Rachel. The money from both these sources seems to have been used for the support of Mrs. Shepherd and the children then living with her, a portion of it being applied after her death to the payment of debts due by her. Appellants were both over twenty-one years of age at the time of the execution by their mother of the deed to Mrs. Livingstone.

The bill of complaint, which was filed within ten years from the death of Mrs. Shepherd, was on final hearing dismissed.

*Foy & Banks* and *Flowers, Brown & Davis*, for appellants.

*Wilson & Johnson* and *Wells, May & Sanders*, for appellee.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above.) A. The instrument under which appellants claim title, in so far as

it deals with the land therein described, is not a will, but is a deed by which the land was conveyed to appellants, subject to a life estate reserved to the grantors. *McDaniel* v. *Johns*, 45 Miss. 632; *Wall* v. *Wall*, 30 Miss. 91, 64 Am. Dec. 147.

B. There is no merit in the contention of counsel for appellee that, conceding the instrument under which appellants claim title is a deed, and not a will, the statute of limitations commenced to run against appellants upon the death of their father, and therefore appellee's title is now perfect by adverse possession. Appellee's possession did not become adverse to appellants until the death of both of the life tenants.

C. When appellee purchased the land, he was charged with notice of appellants' title thereto, although the record of the deed under which they claim had been destroyed by fire, and it had not then been again recorded. *Myers* v. *Buchanan*, 46 Miss. 397. Appellee contends, however, that section 3185 of the Mississippi Code of 1906, first enacted in 1892, operates retrospectively, so that the record of appellants' deed which was destroyed by fire did not constitute constructive notice thereof longer than three years after its destruction; it not having been again placed on the record within that time. This statute has no such retrospective effect. Its clear meaning is: First, that a record which had been lost, stolen, or destroyed prior to the time the statute became operative shall not constitute constructive notice longer than three years from such time, "unless within that time the instrument shall be again placed on the record or proceedings be begun to perfect the record;" and, second, that a record lost, stolen, or destroyed after the statute became operative shall not constitute constructive notice longer than three years from the time of the loss, theft, or destruction thereof "unless within that time the instrument shall be again placed on the record or proceedings be begun to perfect the record."

D. Mrs. Livingstone, Adams, and appellee each had constructive notice of the deed under which appellants claim title. It does not appear from the evidence that any one of them relied upon any act or statement of appellants as indicating that they claimed no interest in the land, and the record does not present a case of estoppel because of the acceptance of benefits. Appellants, therefore, are not now estopped from asserting title to the land.

E. There is no merit in appellee's contention that the evidence does not disclose a common source from which his and appellants' titles are derived. If Mrs. Shepherd's only interest in the land was the life estate reserved in the deed under which appellants claim, the common source of title was her husband, Benjamin Shepherd. If Mrs. Shepherd, and not her husband, was, in fact, the owner of the land, she is the common source from which the titles of the parties hereto are derived.

Reversed, and decree here in accordance with the prayer of appellants' bill.

*Reversed.*

## On Suggestion of Error.

The decree of the court below was on a former day reversed, and decree rendered here in accordance with the prayer of appellants' bill, except that the cause was remanded for the purpose of ascertaining the amount due appellants for rent.

The suggestion of error filed herein by appellee will be overruled; but our former judgment will be amended so as to include appellee's claim for improvements in the account to be stated in the court below.

Suggestion of error overruled.