EDWARD DUNN, BY HIS NEXT FRIEND, IRVING DUNN, AND IRVING DUNN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. HOFFMAN BEVERAGE COMPANY, DE-FENDANT-RESPONDENT.

Argued February 5, 1941—Decided May 20, 1941.

For the plaintiffs-appellants, *Breslin & Breslin* (*James A. Major,* of counsel).

For the defendant-respondent, *Collins & Corbin* (*Edward A. Markley* and *Charles W. Broadhurst,* of counsel).

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court, Bergen Circuit, upon the verdict of a jury directed by the trial court in favor of the defendant. The sole ground of appeal is that the trial court erred in directing a verdict for the defendant.

Suit was brought to recover damages for personal injuries sustained by the infant plaintiff, Edward Dunn, a boy 15 years of age, caused by the bursting of a bottle of sarsaparilla in his hand. His father, Irving Dunn, joined in the suit to recover for medical services incurred by his son's injuries.

The defendant was the manufacturer and bottler of the sarsaparilla. The complaint charged negligence against the defendant, in that it failed to use reasonable care to see that a bottle of proper strength was provided to safely contain the contents thereof; in improperly bottling the contents of the said bottle, as a result of which too much pressure was exerted thereon, and in providing a bottle which was defective in manufacture.

The facts of the case are not substantially in dispute. On June 11th, 1938, one Grant Labery, an adult, accompanied by the infant plaintiff and three other boys, drove his automobile from Englewood, New Jersey, to a Boy Scouts' camp near Blairstown. At Sparta they stopped at a tavern known as "Poole's Tavern" and some of the boys bought things to eat. The infant plaintiff bought a quart bottle of sarsaparilla, another boy bought a quart bottle of orangeade. There was no label or sticker on the bottle of sarsaparilla but the cap thereon bore the name "Hoffman Company" and the word "sarsaparilla." These two bottles were placed in a paper bag by the man in charge of the tavern and were carried by one of the boys to the automobile where they were removed by Labery from the paper bag and packed in the trunk at the rear of the car. They were stood upright on blankets on the floor near the back of the trunk and close to the lid and placed "between duffel-bags and blankets, in such a way that they could not jar or bang in any way—under any condition." The distance from the tavern to the camp was something over thirty miles, of which twenty miles was over a good macadam road, about ten miles over a good dirt road and about one and a half miles over a poor, rough, but passable one-way road. Upon arrival at the camp, Labery opened the lid of the trunk and gave the infant plaintiff his bottle of sarsaparilla and duffel-bag. The infant plaintiff hooked the duffel-bag to his belt and walked away toward the front

of the car, holding the bottle by its neck. After traveling about fifteen feet from the rear of the car the bottle exploded and injured his hand. Aside from the medical testimony, this constituted the plaintiff's case. There was no motion made for a nonsuit.

It must be remembered that the suit is not against the proprietor of Poole's Tavern, the retailer, but is against the manufacturer and bottler of the sarsaparilla.

The defendant offered evidence showing that the bottles used by it are manufactured by the Owen Illinois Glass Company, specifically for the purpose of being used for carbonated beverages, such as sarsaparilla. This glass company is a nationally recognized manufacturer of bottles and, according to the expert, is "the biggest and the finest glass-making concern, not only in the United States, but in the whole world." The defendant, by experts, explained in detail its bottling process, including the testing of the bottles, pressure, &c., showing that proper inspection was made of the bottles and proper care used in bottling their contents. Testimony was to the effect that the bottles after they passed through the defendant's processes would not burst unless there was a contributing factor. By this contributing factor was meant the careless handling of the bottle, and it was stated that if the tensile strength of the bottle was weakened by a fracture, it could cause the bottle to burst; that the banging or jolting of bottles together could cause a weakening of the tensile strength of the glass; that this could be done either in the handling of the bottles from the warehouse to the retailer, or in handling by the retailer.

It was manifest that the bottle of sarsaparilla in question had been in the custody of Poole's Tavern for some time prior to its sale to the infant plaintiff. How long or how short that period was, the plaintiff did not undertake to prove, nor was there any proof offered as to the condition or appearance of the bottle at the time of its purchase or just prior to the time of the accident, nor where or how the bottle was kept, nor with what care it was handled, or what, if anything, happened to it from the time it was delivered by the defendant to the tavern until it was sold to the infant plaintiff.

At the conclusion of the case, when the motion for a direction of a verdict for defendant was made, it was just as reasonable to infer that while in the custody of Poole's Tavern the tensile strength of the bottle had been weakened by careless handling there, as it was to infer that the defendant had been negligent in the bottling.

"Where, in an action to recover damages for injuries alleged to have been caused by defendant's negligence, it appears that the injuries were occasioned by one of two causes, for one of which the defendant is responsible, but not for the other, plaintiff must fail if the evidence does not show that the injury was the result of the former cause; if, under the testimony, it is just as probable that it was caused by the one as the other, he cannot recover." *Stumpf* v. *Delaware Lackawanna and Western Railroad Co.*, 76 *N. J. L.* 153, 158; 69 *Atl. Rep.* 207; *Chester, Admx.*, v. *Cape May Real Estate Co.*, 78 *N. J. L.* 131, 133, 134; *Cook* v. *American Smelting and Refining Co.*, 99 *Id.* 81, 84, 85.

The trial court held, and we think properly, that the burden was on the plaintiff not to prove the mere possibility that the injuries complained of resulted from the negligence of the defendant, but he must exclude all other causes; that the defendant is not charged with the duty of showing affirmatively that something happened to the bottle after it left its control or management; that to get to the jury the plaintiff must show that there was due care during that period. The direction of the verdict by the trial court for the defendant was based upon the principle that if the defendant was to be charged with the damage there should be proof of what was done with the bottle after it had left the defendant's custody and before it came into plaintiff's hand.

Appellant, however, contends that the rule of *"res ipsa loquitur"* applies here. The trial court held that it did not. Much diversity of opinion among the courts of other jurisdictions exist as to whether the doctrine of *"res ipsa loquitur"* applies to the case of a bursting bottle while under the care of another than the manufacturer or bottler.

Appellant contends that the decisions of this court clearly bring the instant case within the doctrine of *"res ipsa loqui-*

*tur"* and in support of this contention he cites two cases, namely, *Taylor* v. *Berner,* 7 *N. J. Mis. R.* 597, and *Healey* v. *Trodd,* 124 *N. J. L.* 64. We do not think that either of these cases supports appellant's contention.

The Supreme Court in *Taylor* v. *Berner, supra,* held that the rule of *"res ipsa loquitur"* applied and the Court of Errors and Appeals, although it reversed in 106 *N. J. L.* 469 on other grounds, concurred in this finding. In that case, however, the defendant was the manufacturer of the vichy and furnished, charged and delivered the bottle.

The state of the case used on the appeal in the Taylor case was before the trial court in the instant case and the trial court points out the distinction in the following language:

"It is interesting to note in the Taylor case, on page 42 of the state of the case, that the driver put the box under the sink the morning of this happening, the driver of the defendant, and that the box had not been handled from the time that the driver of the defendant delivered it, around noontime, until this one bottle was taken out along about 8 or 9 o'clock that night, so that we have an accounting for everything from the moment it left the custody, control or management of the defendant, until the happening, a few hours later; so that the Taylor case is not authority for any holding that the doctrine of *'res ipsa loquitur'* has been extended to include control or management by an intervening store owner."

The proof was to the effect that the vichy was in the same position and condition when the plaintiff was injured as it was when the defendant's servant delivered it.

In the Healey *v.* Trodd case, this court held that the manufacturer of the can was not subject to the rule of *"res ipsa loquitur"* but that the Mueller Company, which packed the spaghetti into the can, was subject to the rule. There was evidence that if the spaghetti were properly packed, the can would not have exploded and that the probable cause of the bursting of the can was poor sealing, over-filling of the can, lack of head-space caused by such over-filling and the resultant pressure when the can was heated, and insufficient inspection after packing, &c. Furthermore, there was no evidence in the Healey case that any acts of the retailer could have caused

the can to burst. There was such evidence present in the instant case concerning the bottle of sarsaparilla.

In neither the Taylor case nor the Healey case was there any proof that the injuries could be occasioned by one of two causes, for one of which the defendant would not be responsible.

In the instant case there is no suggestion that the process that defendant used, the inspections that it gave, the tests that it made were not proper according to the standards of good bottling and good manufacturing of the products of the bottles.

We agree with the trial court that the doctrine of *"res ipsa loquitur"* is not applicable to this case.

In *Mumma* v. *The Easton and Amboy Railroad Co. et al.*, 73 *N. J. L.* 653, which contains many citations and has itself been frequently cited, this court, speaking of the doctrine of *"res ipsa loquitur"* said:

"* * * This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care * * *."

"The rule of *'res ipsa loquitur'* is a rule of evidence only. It takes more than the mere happening of an accident to set the rule in operation * * * The thing causing the accident must have been under the control of the defendant or his servant at the time of the accident * * *." 8 *Thompson's "Commentaries on the Law of Negligence" (White's Supplement)*, §§ 1 to 7923, § 7635 (*p.* 1022).

To the same effect, see also recent decisions of this court in *Spill* v. *Stoeckert & Kinner*, 125 *N. J. L.* 382; *Wilson* v. *Public Service Co-ordinated Transport et al.*, 126 *Id.* 250; *Grugan* v. *Shore Hotel Finance and Exchange Corp.*, 126 *Id.* 257. In the last cited case, after citing *Mumma* v. *The Easton and Amboy Railroad Co. et al.*, *supra*, this court speaking of *"res ipsa loquitur"* said:

"The requirement that the agency or instrumentality must be under the control or management of the defendant in order to invoke the rule is based upon the theory that the means of obtaining information as to the condition and the causes which brought about the occurrence are wholly within the defendant's possession and it is incumbent upon him to explain because of his peculiar knowledge."

To the same effect is *Glicken* v. *Bergman,* 117 *N. J. L.* 306.

In the present case the bottle in question was not actually under the control of the defendant nor, as stated before, was there any proof to show that the condition of the bottle and its contents at the time of the accident had not changed from the time it was delivered to the retailer to the time of its explosion. The testimony produced by the plaintiff simply shows that an accident occurred. Proof of the occurrence of an accident, however, does not raise the presumption of negligence. *Bahr* v. *Lombard, Ayres & Co.,* 53 *N. J. L.* 233; 42 *Atl. Rep.* 730. Negligence is a fact which must be proved and will never be presumed. *Grugan* v. *Shore Hotels Finance and Exchange Corp., supra.*

In the absence of proof that the defendant acted in a negligent manner and that the injury to infant plaintiff resulted therefrom, we are of the opinion that the trial court properly directed a verdict for the defendant.

The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.